```
              UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF ILLINOIS
                 EAST ST. LOUIS, ILLINOIS

JAIMIE LINTON,                    )
                                  )
        Plaintiff,                )
                                  )
vs.                               )   No.
                                  )
ROBERT HERTZ, INDIVIDUALLY,       )
AND IN HIS OFFICIAL CAPACITY      )
AS SHERIFF OF MADISON             )
COUNTY, ILLINOIS, MADISON         )
COUNTY SHERIFF'S OFFICE,          )
AND MADISON COUNTY, ILLINOIS,     )
                                  )
        Defendants.               )
```

**COMPLAINT**

NOW COMES the Plaintiff, Jaimie Linton, by counsel, Eric M. Rhein, P.C., and for her Complaint against the Defendants, Robert Hertz, individually and in his official capacity as Sheriff of Madison County, Illinois, the Madison County Sheriff's Office, and Madison County, Illinois, hereby states as follows:

**Facts Common to All Counts**

1. That Plaintiff is a resident of the Southern District of Illinois, as are each of the Defendants.

2. That at all times relevant to this suit, the Defendant, Robert Hertz, was and is the elected Sheriff of Madison County, Illinois.

3. As such, Defendant Hertz was one of the Plaintiff's direct supervisors.

4. That the Defendant, the Madison County, Illinois

Sheriff's Office, is the department of Madison County government which is managed by Defendant Hertz. Until May, 2013, Plaintiff was one of the employees of the Sheriff's Office.

5. That the Defendant, Madison County, Illinois, is a municipal corporation, duly organized under Illinois Law. The Madison County Sheriff's Office is a division of the government of Madison County, Illinois. Madison County is an indispensable party to this case. Carver v. Sheriff of SaSalle County, 324 F.3d 947 (7th Cir. 2003).

6. That August 30, 2013, the U.S. Department of Justice issued the Plaintiff a right to sue letter. Exhibit 1.

7. That since January 2012 until May 2013 (when the Defendant, Madison County, Illinois laterally transferred the Plaintiff from the Sheriff's Office to the Madison County Probation Department, as a direct result of her EEOC allegations, about the Defendant, Robert Hertz), and engaging in the behavior described infra.

8. That from January 2012 until she left the Sheriff's Office of Madison County, the Defendant, Robert Hertz, as an agent and employee of the Defendants, the Madison County Sheriff's Office and Madison County, Illinois, engaged in a pattern and practice of sexually harassing the Plaintiff, indicating to her that he desired an unwanted romantic relationship with the Plaintiff (the Plaintiff being married for

many years and not wanting an unwelcome and never solicited or tolerated a romantic relationship with Hertz.)

9. That Defendant Hertz's unwelcome and repeated sexual harassment created a hostile work environment for the Plaintiff, such that even Madison County government (the two governmental Defendants) recognized that Plaintiff needed to be transferred to another county department.

10. That until her lateral transfer to the Madison County Probation Department in May, 2013, Plaintiff was Administrator of Business for the Defendants. Her immediate supervisors were Chief Deputy Major Bradley D. Wells and Sheriff Robert Hertz.

11. That when the county allegedly looked into Plaintiff's allegations, they failed to prosecute or discipline Defendant, Robert Hertz, for his unlawful conduct.

12. That on May 10, 2013, Plaintiff filed her EEOC Complaint against the Defendants.

13. That Defendants discriminated against the Plaintiff in the following manner:

    A. Defendant Hertz made comments to and/or about the Plaintiff to the effect that she had a "secret life" (totally false) and a "sinister side" (totally false).

    B. Defendant Hertz falsely and openly accused Plaintiff of having a sexual affair with a co-worker, who was also a subordinate of the Plaintiff.

C. In January, 2012, Hertz told the Plaintiff that there had been a time in his life that he felt "invincible" and had been caught with another woman, a woman not his wife. Said statement was entirely inappropriate and Defendant had no business making that statement to Plaintiff in her work place.

D. Defendant Hertz told Plaintiff several times that he had concerns of whether or not he could trust Plaintiff and that her employment was in jeopardy. Plaintiff told Defendant Hertz that his accusations were out of line and she was extremely angry. Plaintiff told Sheriff Hertz that he had questioned her morals and character and that she could not believe she would be fighting for her livelihood over something that never happened. Plaintiff left the office after about two hours of arguing and went out the back door of Defendant Hertz's office and the building because she was very upset. Defendant Hertz had already approached Captain Decker and was then told the Plaintiff had never had any physical relationship with Decker. Defendant Hertz based his accusations on a few phone calls between Plaintiff and Captain Decker on the phone bill.

E. Throughout the early months of 2012, the environment at the Sheriff's Office was miserable. Plaintiff was called in and her job was threatened several

times.  In February, 2012, upon returning from a training class out of town, Defendant Hertz called Plaintiff into his office with Major Wells present.  He began the conversation by saying, "your continued employment with this office is in jeopardy."  Defendant Hertz went on to ask her how many calls she made while in training.  She told him "not many" as she did not have a car and traveled with the instructor throughout the class.  Plaintiff gave both (personal and department issued) phones to the Defendant Hertz and Major Wells so they could look through their history.  Defendant Hertz then left the office and Major Wells and Plaintiff spoke regarding what was going on.  Major Wells expressed that he did not know what to say to Plaintiff except he asked her not to quit and to try to work through it.  Major Wells informed her that Defendant Hertz and Captain Decker were in the garage smoking and Captain Decker was on the phone.  While on the phone, Captain Decker said he would see whomever he was speaking to on Wednesday.  Defendant Hertz assumed he was talking to Plaintiff because she was due back from training on Wednesday and he became infuriated.  In closing the meeting, the Defendant told Plaintiff that once the "confidence" of her position had been broken he was no longer obligated to keep her employed.  Plaintiff told the Sheriff she thought it was "bullshit" that she was fighting

for her job over something that did not happen. He then stated he felt better about the situation and that the Plaintiff and he would continue to try to work through it.

    F. Plaintiff was approached by Defendant Hertz when she left for lunch at the same time as Captain Decker. Defendant Hertz once asked Plaintiff to pay his cell phone bill at lunch. He left just a few minutes prior to Plaintiff's lunch hour. Plaintiff left for lunch and headed to the Verizon store to pay his bill. She then got a sandwich and returned to the office. Upon her return Defendant Hertz told her that any time he just takes off like he did it is because he is working on something "covert." Defendant Hertz then told her that he saw her on her personal cell phone in her car and that she should support the policy he put out. Defendant Hertz also told her that the policy was a direct result of Plaintiff's need to talk on her personal phone. He stated the first thing Plaintiff does when she leaves the office for the day is to get on her personal phone. The only phone call Plaintiff made while on her lunch hour was near the parking lot to the Verizon Store, so he had to have asked Plaintiff to pay his bill then followed her there.

    G. After one of their "meetings" Defendant Hertz stated that it was a shame that he always felt better after

he confronted Plaintiff and she always felt worse.  She told him he was "beating a dead horse" and that it was "inappropriate."

    H.  Defendant Hertz called Rob Henke in Information Systems of the Madison County Sheriff's office and told him his office was investigating the Plaintiff.  Defendant Hertz had Information Systems pull all Plaintiff's telephone and computer records and told Rob not to discuss it with anyone because it was a criminal matter.  In fact, Plaintiff had never committed any crime and there never has been any real criminal investigation of her.

    I.  On any occasion that Plaintiff would take off work or leave early, Defendant Hertz would check to see if Captain Decker was working.  If he was not working, Defendant Hertz would become very irritated and say things like "whatever you do in your secret life."  Some employees of the Sheriff's Office referred to Defendant Hertz's behavior as a "jealous rage."

    J.  In one of their meetings in May, 2012, Plaintiff told Defendant Hertz what he was doing was not right and he said he knew that and that it scared him.  Defendant Hertz told Plaintiff that his "push" to get her under the Merit Commission was to protect her from his knee jerk reactions.

    K.  Defendant Hertz accused Plaintiff on several

occasions of closing out her computer when he walked in her office and that she was hiding things from him. Plaintiff told Defendant Hertz that she was not hiding things from him and that he was welcome to look through whatever he wanted on her computer.

    L.  Plaintiff and Defendant Hertz had issues again in November, 2012, when Captain Decker needed to use FMLA to care for his mother.  The correspondence on this incident was all transmitted over email and was forwarded to Rob Henke in the Information Systems Division of the Madison County Sheriff's office.

    M.  Defendant Hertz emailed Plaintiff with non-work related items when he or Plaintiff were not in the office and he became angry with, and belittled Plaintiff, when she did not respond quickly enough to his emails.  If Plaintiff and Defendant did not speak every day via e-mail, text or telephone, he would get angry with Plaintiff.  This included vacation days.  Defendant Hertz even had Plaintiff upgrade her county phone package for international when she went to Mexico with her family.  Defendant Hertz got mad when Plaintiff did not contact him enough.  This was the case for every vacation she took with her family.

    N.  Captain Decker has been transferred out of the Sheriff's Office and was not allowed to have any contact

with the Plaintiff, nor was he allowed to be in the main Sheriff's Office headquarters. His daily activities were tracked via the GPS on his department vehicle to ensure he was not, nor could be in the same location as Plaintiff. No other officer employed by the Sheriff's Office was treated this way.

    O.  Major Wells and Plaintiff have both given accounts of the events of 2012 Administrative Professionals Day when Defendant Hertz and Major Wells took Plaintiff to lunch. Defendant Hertz bought Plaintiff several gifts that week, then took her to lunch, and then had Major Wells drive them to see his house and the view of the lake. Major Wells even mentioned he felt as though he was tagging along with the Sheriff trying to have a date.

    P.  It was a department joke that none of the guys want to call Plaintiff on her department issued phone or have her in their office too long because they "will be having an affair with her next."

    Q.  For the past year and a half of Plaintiff's employment, her job was threatened, her morals and character questioned, and Defendant Hertz even threatened to have a private investigator follow the Plaintiff.

    R.  Plaintiff wondered if the recent FOIA requests from outside agencies and the County may have raised

red flags.

S. Plaintiff told Defendant Hertz several times in the past year that she could understand if any of the issues he has had with her were work related, but that was not ever the case. Plaintiff's work ethic, production, or attendance, have never been questioned. Plaintiff has never received any type of reprimand or discipline. The office environment became uncomfortable. Plaintiff found the way the Defendant Hertz interacted with her to be intimidating and strange. Defendant Hertz never made any type of physical advance towards the Plaintiff; however Defendant Hertz treated her as if he wanted to have a relationship with her, possibly romantic.

T. On Friday, April 26, 2013, Plaintiff had tears in her eyes because Defendant Hertz had emailed her, while he was out of town on a personal vacation. Defendant Hertz sent Plaintiff hostile and/or harassing e-mails during this trip.

U. On Monday, April 29, 2013, Madison County Sheriff's office Deputy, Brad Wells, gave a deposition in the county's defense lawyer's office and asked the county's lawyer to speak with him about the harassment and his liability if he did not report it. Mr. Wells felt obligated under county policy to do something about this. The county's counsel

told him that he needed to ask Plaintiff one more time if she wanted him to make a report on the issue or file a complaint.

    V.   On Monday, April 29, 2013, Brad Wells spoke with the Plaintiff in his office about how she was doing with the situation. He asked her if she has changed her mind about addressing the issue. Mr. Wells told her that he felt compelled to do something because she had made him aware of her feelings of being harassed, bullied, and intimated. Plaintiff again told him that she fears for her job and that she does not want to be labeled as "one of those" but she said that she has been waiting for someone to do something about the situation. She told Mr. Wells that she felt someone would have done something about all of this to make it stop. He asked Plaintiff if she would follow through with a complaint because he felt what was happening was a violation of policy and that something needed to be reported. As administrator of the Sheriff's Office Mr. Wells thought he was required to do something about Plaintiff's situation as Chief Deputy of the Madison County Sheriff's office.

    W.   At times, when Plaintiff left a room Defendant Hertz was in, with other male employees present, he would make offensive to hand gestures to indicate that he wanted

to grab Plaintiff's breasts and/or he would act like he was unzipping his pants; such conduct contributed to the hostile work environment.

## Count I

## Violation of Title VII of the Civil Rights Act -

## Sexual Harassment - Hostile Workplace Environment

14. That the facts alleged in the "Facts Common to All Counts," detailed above, are hereby incorporated by reference herein as though fully set out herein in Count I as paragraphs 1 through 13 of this Complaint.

15. That the Defendant, Hertz, as Sheriff of Madison County, Illinois, was acting at all time relevant hereto as an agent and employee of the Defendants, Madison County, Illinois and as head of the Madison County, Illinois Sheriff's Department when he sexually harassed the Plaintiff.

16. That Defendant Hertz engaged in a pattern of abusive, harassing and totally inappropriate workplace behavior towards the Plaintiff because she never accepted his inappropriate and unsolicited romantic advances in the work place and/or in her off work hours; however, Defendant Hertz is the Madison County Sheriff twenty-four hours a day.

17. That Defendant created an all pervasive hostile work environment for the Plaintiff, threatening the loss of her job when Plaintiff stood up for herself and fending off Hertz's

unwanted romantic advances and overtures.

18. That Defendant Hertz's aforesaid conduct resulted in unprofessional and intolerable working conditions for the Plaintiff and a fellow employee (whom Hertz falsely accused Plaintiff of having an affair with), which directly led to, with the agreement of Hertz, finally, in the Plaintiff's lateral transfer to the Probation Department in May, 2013, while Plaintiff's EEOC sex harassment claims were pending.

19. That an alleged "investigation" by Madison County did not discredit the credibility of the Plaintiff's factual allegations against Defendant Hertz.

20. That Defendants' aforesaid conduct has resulted in Plaintiff having a claim, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000(e), which provides that:

> "It shall be unlawful for an employer ... to discriminate against any individual with respect to his compensation terms, conditions, or privileges of employment, because of the individual's ... sex."

21. "Sexual harassment in the workplace violates "title VII's prohibition against general discrimination when such harassment fits into one (or both) of two paradigms: (1) quid pro quo; and (2) hostile work environment." <u>Perks v. Town of Huntington</u>, 251 F. Supp. 2d 1143 (E.D.N.Y. 2003). While there is circumstantial evidence against the defendants such fits both

categories of sexual harassment, Plaintiff focuses on the latter category in this count of her Complaint.

22. "The hostile work environment paradigm ... permits a plaintiff to recover even in the absence of a tangible job action against him .... Plaintiff must show that the harassment was so 'severe or pervasive' as to alter the condition of the victim's employment and create an abusive working environment." Id. at 1155.

23. That Plaintiff sustained damages as a direct result and proximate result of the Defendants' wrongful conduct towards her, in that she suffered severe emotional distress, lost sleep, and has endured problems in her marriage, all without fault of her own.

24. That Plaintiff also has a claim for punitive damages against Hertz, in that the wrongs he has committed against her were done so intentionally and purposefully, and there is a need to punish and deter Hertz and others in similar positions of power and authority over the income and well being of subordinates from committing like conduct in the future.

WHEREFORE, the Plaintiff prays for an award of compensatory damages against the Defendants in the amount of $1,000,000, and the Plaintiff prays for an award of punitive damages against the Defendant, Robert Hertz, in the amount of $1,000,000, plus Plaintiff prays for an award of statutory attorney's fees and all

her reasonable litigation costs, and such other and further relief as the court deems just.

## Count II

## Intentional Infliction of Emotional Distress

25. That this court has pendant jurisdiction of this state court common law claim.

26. That the conduct committed by Defendant Hertz, as described in the section of this Complaint called, "Facts Common to All Counts," constitutes the tort of intentional infliction of emotional distress, under Illinois law.

27. That Hertz's conduct towards the Plaintiff was extreme and outrageous, causing the Plaintiff to suffer emotional distress that was and is severe in nature.

28. That Hertz acted towards the Plaintiff recklessly (i.e., conduct Defendant knew or should have known severe emotional distress would be certain or substantially certain to result).

29. That Hertz's extreme and outrageous conduct towards Plaintiff arose from Hertz's abuse of his high political and powerful position as an agent or employee of the co-defendants the Madison County Sheriff's Department and Madison County, Illinois; such position in life and in the workplace gave Hertz actual or apparent authority over the Plaintiff or the power to affect adversely the interests of the Plaintiff. Cornish v.

Papis, 962 F. Supp. 1103 (C.D. Ill. 1997).

30.   That Hertz committed said acts which caused Plaintiff to suffer severe and extreme emotional distress and he did so intentionally and purposefully, with reckless disregard for the employment rights of the Plaintiff.

31.   That punitive damages are in order in this case against Defendant Hertz, in order to punish him and to deter him and others from engaging in similar conduct in the future.

WHEREFORE, Plaintiff prays for an award of compensatory damages against the Defendants in the amount of $1,000,000, and a like amount in punitive damages against Defendant Hertz, plus her costs of suit.

*[signature]*

Eric M. Rhein, #06186203
Attorney for Plaintiff, Jaimie Linton
6897 West Main Street
Belleville, IL 62223
(618)394-9230 (Office)
(618)394-9404 (Fax)
erhein@charter.net (Email)